■ In the Matter of ELLIS HOSPITAL, Appellant, v LORNA

McBarnette, as Executive Deputy Commissioner of the Department of Health of the State of New York, et al., Respondents. [604 NYS2d 359] —White, J. Appeal from a judgment of the Supreme Court (Doran, J.), entered May 4, 1992 in Schenectady County, which, in a proceeding pursuant to CPLR article 78, granted respondents' motion to dismiss the amended petition as untimely.

This matter involves the Medicaid reimbursement rates for alternate level of care (hereinafter ALC) patients[1] established by respondent Department of Health (hereinafter DOH) for petitioner for the 1986 and 1987 rate years. The methodology for the computation of these rates is set forth in Public Health Law § 2807-a and the implementing regulations (10 NYCRR 86-1 *et seq.*). They provide that, if a non-rural hospital such as petitioner, had an 80% medical/surgical occupancy rate, it was entitled to be reimbursed for its ALC patients at its acute care per diem rate (10 NYCRR 86-1.11 *[l]* [2] [iii]). If the hospital did not have this occupancy rate, it would be reimbursed at the regional average Medicaid rate for skilled nursing or health related facilities in an amount significantly less than the acute care rate (10 NYCRR 86-1.11 *[l]* [2] [vi]). A hospital with less than an 80% occupancy rate could avoid this lower reimbursement rate by either applying for decertification of medical/surgical beds by the end of the rate year, thereby increasing its occupancy rate (10 NYCRR 86-1.11 *[l]* [2] [v]), or establishing a discrete ALC patient care unit which would entitle the hospital to an ALC reimbursement rate higher than the skilled nursing and health facility rate but lower than the acute care rate (10 NYCRR 86-1.11 *[l]* [2] [vii]).

Here, petitioner requested an ALC reimbursement rate for 1986 on September 30, 1986. It confirmed this request and also requested the establishment of an ALC rate for 1987 on May 20, 1987. At this time petitioner was advised that, once an ALC rate was promulgated for 1986 and 1987, it could not request a withdrawal of the rate for either year at some later date. Petitioner also applied, prior to December 31, 1987, to decertify 61 medical/surgical beds which allegedly increased its occupancy rate for 1987 to over 80%.

In a determination dated May 13, 1988, petitioner's request for an ALC rate for 1986 and 1987 was approved and peti-

1. ALC patients are those for whom it has been medically determined that inpatient hospital services are no longer necessary, but that post-hospital extended care services are necessary and are being provided by the hospital (10 NYCRR 86-1.11 *[l]* [1]).

tioner took no administrative appeal from this determination. However, at a meeting held on October 11, 1990, petitioner orally requested DOH to review its 1987 "ALC penalty", the difference between the ALC rate and the acute care rate. By letter dated May 8, 1991, DOH denied as untimely petitioner's request to withdraw its request for an ALC rate for 1986 and 1987, and further stated that petitioner's request for a waiver of the ALC penalty for 1987 could not be approved since its occupancy rate for 1987 was 69%.

Petitioner then commenced this proceeding on September 9, 1991, and by amended notice of petition sought a judgment, *inter alia,* vacating respondents' May 8, 1991 "determination" denying its request for a waiver, withdrawal or cancellation of the ALC rate for 1986 and 1987, and also directing respondents to recalculate the reimbursement rate for 1986 and 1987 and to pay the full acute care rates for those years. Prior to answering, respondents moved to dismiss the amended petition as being untimely. Supreme Court granted the motion holding that petitioner's attempt to challenge the rates more than three years after their adoption was barred by the Statute of Limitations. This appeal ensued.[2]

In resolving the issue of whether the Statute of Limitations runs from respondents' May 13, 1988 rate determination or its May 8, 1991 letter, the essence of petitioner's claim must be ascertained *(see, Matter of Westage Dev. Group v White,* 149 AD2d 790, *lv denied* 74 NY2d 609; *Bryden v Wilson Mem. Hosp.,* 136 AD2d 843). As set forth in its amended notice of petition, petitioner's objective in this proceeding is to obtain an acute care rate for its ALC patients for the 1987 rate year, and thus the essence of this proceeding is a challenge to respondents' rate determination.

In Medicaid rate cases, rate determinations are deemed final for Statute of Limitations purposes when the petitioner is able to ascertain its consequences so that its impact can be accurately assessed *(see, New York State Assn. of Counties v Axelrod,* 78 NY2d 158). Here, the 1987 rate determination was final and binding when made and communicated to petitioner on May 13, 1988 *(see, Matter of Amsterdam Nursing Home Corp. v Axelrod,* 172 AD2d 58, *lv denied* 80 NY2d 755). Moreover, the promulgation of the ALC rate provided notice to petitioner that respondents either did not consider its 1987

---

2. We deem petitioner to have abandoned its appeal insofar as the 1986 rate year is concerned since its arguments on this appeal solely relate to the 1987 rate year.

application for decertification of medical/surgical beds or erroneously calculated its occupancy rate since an ALC rate is only applicable where the occupancy rate is below 80%. Petitioner's oral request for a review of its 1987 occupancy rate did not render the May 13, 1988 determination non-final or extend the Statute of Limitations, because its request was not supported by new information and respondents did not engage in a "fresh and new redetermination" of petitioner's 1987 occupancy rate *(see, Matter of Medical Arts Sanitarium v New York State Dept. of Health,* 184 AD2d 399). The May 1991 letter of DOH was merely an explanation of why it did not consider petitioner's decertification application when it promulgated the 1987 reimbursement rates for the ALC patients *(see, Matter of Adler v New York State Teachers' Retirement Sys.,* 188 AD2d 732).

Were we to reach the merits of this proceeding, we would conclude that DOH's determination had a rational basis since its construction that 10 NYCRR 86-1.11 *(l)* (2) (v)[3] requires the medical/surgical beds to be decertified in the rate year in question is a reasonable interpretation of said regulation *(see, Matter of Sylcox Nursing Home & Health Related Facility v Axelrod,* 184 AD2d 986, *lv denied* 80 NY2d 761).

Weiss, P. J., Mercure, Cardona and Mahoney, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

3. 10 NYCRR 86-1.11 *(l)* (2) (v) reads: "Beds for which a facility has applied for decertification by December 31, 1986 shall not be counted in the calculation of 1986 occupancy rates for the purposes of this subdivision. Beds for which a facility has applied for decertification by December 31, 1987 shall not be counted in the calculation of 1987 occupancy rates for the purposes of this subdivision."